269 U.S. 1 (1925)
PATTERSON ET AL.
v.
LOUISVILLE & NASHVILLE RAILROAD CO. ET AL.
No. 221.
Supreme Court of United States.
Argued April 23, 24, 1925.
Decided October 12, 1925.
ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.
*2 Mr. Edgar Watkins, with whom Mr. Mac Asbill was on the brief, for plaintiffs in error.
Mr. Nelson W. Proctor, with whom Mr. William A. Northcutt was on the brief, for defendants in error, Louisville & Nashville R.R. and Nashville, Chattanooga & St. Louis Ry.
Mr. John F. Finerty, for Davis, Director General.
*6 MR. JUSTICE BRANDEIS delivered the opinion of the Court.
Section 4 of the Act to Regulate Commerce as amended June 18, 1910, c. 309, 36 Stat. 539, 547, provides, among other things: "That it shall be unlawful for any common carrier subject to the provisions of this Act . . . to charge any greater compensation as a through rate than the aggregate of the intermediate rates subject to the provisions of this Act."
This suit was brought in the federal court for northern Georgia, under § 16, paragraph 2, of the Act, to enforce an order of reparation for $30,000 which had been entered by the Interstate Commerce Commission on April 9, 1923, pursuant to §§ 8 and 9. The shipments having been made from time to time between January 1, 1916 and December *7 1, 1918, both the railroad companies and James C. Davis, as agent designated by the President under § 206 of Transportation Act, 1920, c. 91, 41 Stat. 456, 461, were joined as defendants before the Commission and in the courts. The rates under which these shipments were made were first established in 1892, and were proportionately increased under the terms of general order No. 28 of the Director General of Railroads on June 25, 1918. The case was heard upon demurrer to the declaration, to which were annexed as exhibits the several complaints before the Commission and the order of the Commission with incorporated reports. The demurrers were sustained by the District Court; judgment was entered for the defendants; and this judgment was affirmed by the Circuit Court of Appeals, 2 Fed. (2d) 592. The case is here on writ of error under § 241 of the Judicial Code.
The complaint before the Commission as amended charged that the through rates were "unreasonable, excessive and unjustly discriminatory contrary to the First, Third and Fourth Sections," and also charged specifically that they violated the aggregate-of-intermediates clause above quoted. The report shows that relief was not granted on the ground of unjust discrimination under § 3, nor on the ground of departure from the long-and-short-haul clause of § 4. As to the remaining grounds of relief asserted in the complaint, the report states: ". . . we find that, while the rates assailed appear not unduly high, they were unreasonable in and to the extent that they respectively exceeded the aggregate of the intermediate rates subject to the act; that complainants made shipments and paid and bore the charges thereon upon the basis of the through rates and were damaged thereby; and that they are entitled to reparation on the basis of the difference between the respective through rates and the sums of the lowest intermediate rates subject to the act applicable on all shipments which moved since the dates above stated for the several complainants."
*8 Whether the Commission intended to base its order of reparation upon § 1, or upon the aggregate-of-intermediates clause of § 4, or upon both, is left uncertain by the language used. The District Court apparently assumed that the report awarded, and the declaration sought, such relief on both grounds. It held that there was no liability under § 4, because the Commission had found that the through rates which exceeded the local had been protected by proper application for relief from the operation of that clause of the section. It held that there was no liability under § 1, because the Commission found that the through rates, although higher than the aggregate of the intermediates, were "not unduly high." The Circuit Court of Appeals construed the declaration as seeking recovery only on the ground that the quoted clause of § 4 had been violated; and it affirmed the judgment because the shippers had failed to show that this violation had caused them special pecuniary damage. The declaration, and the brief and argument submitted for the shippers in this Court, make it clear that the only cause of action sued on is the violation of the aggregate-of-intermediates clause of § 4. We have, therefore, no occasion to pass upon the effect of the finding that the through rates were "not unduly high" or on other questions discussed by counsel bearing upon liability under § 1.
The shippers insist that, since the declaration set forth an order of reparation for violation of the aggregate-of-intermediates clause duly made upon complaint and hearing, the demurrer should have been overruled. The argument is that the Commission is without power to suspend the aggregate-of-intermediates clause; that if it has any such power, it is only to the extent of relieving the carrier from criminal liability under § 10 of the Act, so that in no event can a suspension relieve the carrier from civil liability to shippers; that the Commission thus retains the power under §§ 8 and 9 to award reparation for damage *9 suffered; that, whatever the power of the Commission to suspend the clause in question, that power does not appear to have been invoked in this case by an adequate and timely application to the Commission; that since, on any one of the above grounds, the Commission was free to award reparation upon finding damage suffered as a result of the higher through rate, and found such damage, its report stated a prima facie liability; and that, as the declaration embodied the report, it was good on demurrer. The argument is, in our opinion, unsound.
The aggregate-of-intermediates clause was inserted in § 4 by the Act of June 18, 1910. Since that amendment, as before, the section empowers the Commission, upon special application, to "prescribe the extent to which such designated common carrier may be relieved from the operation of this section." The question whether, after the amendment, the power so conferred was still limited to the long-and-short-haul clause or extended also to the aggregate-of-intermediates clause, received careful consideration immediately after the passage of the 1910 Act. The Commission concluded that its power to grant the relief applied to both of these clauses. In its annual report for 1911 the reasons for this conclusion were set forth. Pp. 19-20. The construction then adopted has been acted upon consistently ever since.[1] So far as appears, no court, federal or state, has taken a different view. And Congress has acquiesced.
In support of the contention that the power to relieve from the operation of the section does not cover this case, the shippers point to the fact that, while the charge of the *10 higher through rate did not become unlawful per se until the provision to that effect was inserted in § 4 by the 1910 Act, the Commission had repeatedly held that a through rate higher than the aggregate of the intermediates was prima facie unreasonable.[2] From this they argue that the construction given to the amended Act by the defendant carriers would result in abridging, instead of enlarging, the rights of shippers in this respect, and therefore should not be adopted. We think such a conclusion erroneous. The construction given the section by the carriers does not result in abridging the rights of shippers. As a result of the amendment such through rates, unless protected by proper application, are not merely prima facie unreasonable, but unlawful by express statutory provision. The Commission, while claiming the power to suspend the operation of the clause in question, has continued to hold that, as before the amendment, such through rates are prima facie unreasonable when attacked under § 1 of the Act.[3]
*11 No good reason is shown for denying to the words used their clear and natural meaning. Compare Skinner & Eddy Corp. v. United States, 249 U.S. 557, 564-568. On the other hand, there is good reason why the two prohibitions of § 4 should be treated similarly. Apart from statutory enactment it is prima facie unreasonable to charge more for a shorter than for a longer haul. To charge more for a through haul than the aggregate of the intermediate rates is likewise prima facie unreasonable. In each case conditions may exist which, if shown, would establish the reasonableness of the rate in question. Under the Act to Regulate Commerce as originally enacted the carriers were, in each class of cases, at liberty to introduce the rate without first securing the consent of the Commission. If its invalidity were later asserted, they could escape liability by establishing then its justification. By amendatory legislation, Congress provided, in each class of cases, that the rate should not be charged unless, prior to its introduction, the Commission had, upon special application, granted authority therefor. Intermountain Rate Cases, 234 U.S. 476.
The shippers' contention that relief from the operation of the aggregate-of-intermediates clause was not invoked by an adequate and timely application is also unsound. Under the second proviso of § 4 the rates complained of, if in effect on June 18, 1910 and then lawful, remained so, provided an application to suspend the operation of the section was duly made and was either allowed or remained undetermined. The District Court construed the report of the Commission as finding that the then existing rates here in question were so protected. We, also, construe the report as finding, in effect, that application for relief was made and was both adequate and timely.
It is true that the due filing of such an application for relief from the aggregate-of-intermediates clause or even an order granting relief thereon, would not render legal a *12 rate which violated some other section of the Act. See United States v. Merchants, etc. Assn., 242 U.S. 178, 188. A through rate would be unlawful, despite such an order, if it violated § 3 because unjustly discriminatory, or if it violated § 1 because unreasonably high. The Commission is correct in holding, as before stated, that if a through rate higher than the aggregate of the intermediates is attacked under § 1, the prima facie presumption that such higher through rate is unreasonable, and hence unlawful, obtains now as it did before the 1910 amendment. But no such question could arise in a proceeding limited to § 4. In a proceeding for violation of either clause of § 4, there is no occasion to consider either the presumption of unreasonableness or the existence of a justification for making the through rate higher. Neither is relevant. For if there has been an adequate and timely application within the six months, which application remains undetermined  or an application filed later and granted  there can be no violation of that section. If there was no such application filed, the section is violated by the higher through rate, even if conditions are shown which would have justified the rate as against a charge of unreasonableness under § 1.
Since there can be no recovery under § 4 because of the pendency of an application for relief, we have no occasion to consider whether the rule of Davis v. Portland Seed Co., 264 U.S. 403, as to damages applies to violations of the aggregate-of-intermediates clause, nor whether it applies alike to suits based on reparation orders and to those instituted in the courts without such prior order.
Affirmed.
NOTES
[1] Humphreys Godwin v. Yazoo & M.V.R.R. Co., 31 I.C.C. 25, 29; Through Rates from Buffalo-Pittsburg Territory, 36 I.C.C. 325; Through Rates to Points in Louisiana and Texas, 38 I.C.C. 153; Du Pont de Nemours & Co. v. Director General, 62 I.C.C. 109; Fares between New York and Points West of Newark, 74 I.C.C. 516; Fidelity Lumber Co. v. Louisiana & P. Ry. Co., 83 I.C.C. 499, 500.
[2] Hope Cotton Oil Co. v. Texas & P. Ry. Co,, 12 I.C.C. 265; Coomes v. Chicago, M. & St. P. Ry. Co., 13 I.C.C. 192; Oshkosh, Logging Tool Co. v. Chicago & N.W. Ry. Co., 14 I.C.C. 109; Hardenberg, Dolson & Gray v. Northern Pacific Ry. Co., 14 I.C.C. 579; Momsen & Co. v. Gila Valley, G. & N. Ry. Co., 14 I.C.C. 614, 615; Lindsay Bros. v. Michigan Central R.R. Co., 15 I.C.C. 40; Michigan Buggy Co. v. Grand Rapids & I. Ry. Co., 15 I.C.C. 297; Lindsay Bros. v. Baltimore & O.S.W.R.R. Co., 16 I.C.C. 6; Wells-Higman Co. v. Grand Rapids & I. Ry. Co., 16 I.C.C. 339; Blodgett Milling Co. v. Chicago, M. & St. P. Ry. Co., 16 I.C.C. 384; Smith Mfg. Co. v. Chicago, M. & G. Ry. Co., 16 I.C.C. 447; Milburn Wagon Co. v. Lake Shore & M.S. Ry. Co., 18 I.C.C. 144; Windsor Turned Goods Co v. Chesapeake & O. Ry. Co., 18 I.C.C. 162.
[3] See, e.g., Humphreys Godwin Co. v. Yazoo & M.V.R.R. Co., 31 I.C.C. 25; Alabama Packing Co. v. Louisville & N.R.R. Co., 47 I.C.C. 524, 529; Williams Co. v. Pennsylvania Co., 50 I.C.C. 531, 533; Virginia-Carolina Chemical Co. v. Atlantic Coast Line R.R. Co., 78 I.C.C. 107; Davision & Namack Foundry Co. v. Pennsylvania R.R. Co., 81 I.C.C. 345; La Crosse Chamber of Commerce v. Director General, 93 I.C.C. 602.