**UNITED STATES of America,
Plaintiff,**

v.

**Bruce Gordon PATTEN, Defendant.**

**Crim. No. 184–70.**

United States District Court,
D. Puerto Rico.

June 26, 1972.

Julio Morales Sanchez, U. S. Atty. D. Puerto Rico, Old San Juan, P. R., for plaintiff.

Gustavo Adolfo del Toro, Hato Rey, P. R., for defendant.

## MEMORANDUM OPINION

TOLEDO, District Judge.

Petitioner submitted to the Court an oral Motion to Dismiss the Indictment for lack of jurisdiction alleging that the securities involved in the case against him, because of their particular or unique nature, were traveler's checks and subject to Section 2314, paragraph 4 of Title 18, United States Code. Since the petitioner had been charged under Title 18, Section 2314, paragraph 3, petitioner alleged that he had been erroneously charged and, therefore, the Indictment should be dismissed. In view of petitioner's allegations, the Court held an evidentiary hearing to determine the issue of whether the securities involved in this case were or were not traveler's checks.

At the hearing ordered by the Court, the petitioner presented evidence concerning the nature of the securities involved in this case. After the evidence was heard and the attorney for the defendant, as well as the Assistant United States Attorney gave oral argument, this Court denied the Motion to Dismiss the Indictment presented by the defendant. This Court decided that the securities at issue were not traveler's checks, but were securities covered under the definition of securities as used in Paragraph 3 of Section 2314. Immediately thereafter, the petitioner, through his counsel, raised the issue that even though the securities at issue in this case were securities within the meaning of Title 18, Sections 2311 and 2314, they had not been falsely made and forged by the petitioner in view of the case law applicable under Section 2314, Paragraph 3.

This Court, after having had the benefit of memoranda of law, both from the petitioner and from the Government, has given complete and elaborate consideration to petitioner's argument and the case law cited by him in his

memorandum and it expresses its opinion that petitioner's contention is not supported by the case authorities.

The Congressional purpose of Title 18, United States Code, Section 2314, Paragraph 3, as proclaimed by the United States Supreme Court in the case of United States v. Sheridan, 329 U.S. 379, 384, 67 S.Ct. 332, 335, 91 L.Ed. 359 (1946) was to prevent "further frauds or the completion of frauds, partially executed. But it also contemplated coming to the aid of the states in detecting and punishing criminals whose offenses are complete under state law, but who utilize the channels of interstate commerce to make a successful getaway and thus make the states' detecting and punitive process impotent." And at page 389, 67 S.Ct. at page 337, the Court noted, "the legislative history shows that the purpose was to bring operators in these false securities into substantially the same reach of federal power as applied to others dealing in stolen goods, securities, and money. In one respect the object was to make their apprehension and conviction more easy, for the $5,000.00 minimum in value was intentionally omitted." This last sentence fits in perfectly with the Congressional intent of providing the States with a much needed help in tracking down and prosecuting criminals which by a mere crossing of a state boundary can make the machinery of justice of said state impotent against a crime committed within its boundaries.

Paragraph 3 of Section 2314 does not make any distinction, contrary to Paragraph 1 of Section 2314, between big time and small time operators. The Court very clearly states in *Sheridan*, supra, at page 390, 67 S.Ct. at page 338, nor can we treat forged checks differently from other securities, either because they are forged or because the forgery is done by 'little fellows' who perhaps were not the primary aim of Congressional fire. The statute expressly includes checks. It makes no distinction between large and small operators." Following this line of reasoning, the United States Court of Appeals for the

Fifth Circuit, in Argent v. United States, 325 F.2d 162, 163, emphasized that "there is no minimum requirement in the paragraph relating to the fraudulent transportation of securities including checks . . . It is now settled that a check in an amount as small as $20.00 may form the basis for a charge under 18 U.S.C.A. § 2314." See also Carlson v. United States, 274 F.2d 694 (C.A. 8, 1960).

The above expressed Congressional intent, as explained by the United States Supreme Court in the *Sheridan* case, is still valid today and has not suffered any modifications or alterations in the light of the Legislative history of the 1968 Amendment to Section 2314 as a direct result of the case of Streett v. United States, 331 F.2d 151 (C.A. 8, 1964). Congress wanted to come to the aid of the states and its desires were expressed in Section 2314, Paragraph 3.

With regard to forgery, in the case of United States v. First National City Bank of New York, 235 F.Supp. 894 (S.D.N.Y., 1964), the Court defined forgery in the following manner, "The Federal rule appears to be that forgery may be committed although the forged signature does not purport to be that of some other person if the fictitious or assumed name is used with intent to defraud." Although the above cited case is a civil case, the Court looked to the *criminal definition of forgery* (emphasis ours), to help it interpret the Regulations under the National Housing Act at issue in that case. And in the case of Rowley v. United States, 191 F.2d 949 (C.A. 8, 1951), at page 951, the Court stated, " . . . it is well settled that the crime of forgery may be committed by the signing of a fictitious or assumed name, provided, of course, that the instrument as so completed is made with intent to defraud."

The language used in both cases, United States v. First National City Bank of New York, supra, and *Rowley*, supra, interpret and define the word forgery as used in 18 U.S.C. Section 2314, Paragraph 3, and its predecessor, Section 471. In both definitions there stand out two common elements of the

definition of forgery, namely, signing an assumed or fictitious name and doing so with the intent to defraud.

Another case that sheds light into the definition of forgery as it pertains to Section 2314, Paragraph 3, is the case of Castle v. United States, 287 F.2d 657 (C.A. 5, 1961). Even though this case dealt with American Express Money Orders, these are also securities within the definition of Section 2311 and 2314, Paragraph 3, and the treatment given to these securities is parallel to the treatment that would be given to checks under Section 2314. In the *Castle* case, the Court states, "If the blank money orders were not 'securities' at the time that they were taken by the appellant, they certainly became such and were forged and falsely made, when he filled in the names and amounts . . ." All these actions on the part of the defendant if proven beyond a reasonable doubt, would constitute the forged and falsely made to which the case of *Castle*, supra, refers.

■ In the present case, it was alleged on oral argument by the Government that the defendant, herein petitioner, obtained the Bankcard checks in blank and that afterwards he filled in the date, amount of the check, the endorsement and the number of the identification card. All these alleged actions on the part of the petitioner, if proven beyond a reasonable doubt, would constitute the falsely made and forged securities to which the Court referred to in the *Castle* case, supra.

Even in a case where the Court felt that Section 2314 had not been violated since the defendant, although with intent to defraud issued a check in his own name, the Court defined forgery as follows: "It is well established that forgery contemplates a writing which falsely purports to be the writing of another person than the actual maker." Greathouse v. United States, 170 F.2d 512, 514 (C.A. 4, 1948). In a more recent case, the same Circuit in the case of Cunningham v. United States, 272 F. 2d 791 (C.A. 4, 1959), distinguished the

*Greathouse* case because in that case the defendant wrote his own name whereas in the *Cunningham* case the defendant, "passed himself off as another person; . . . his writing falsely purported to be [somebody elses."]

The Fifth Circuit has also dealt with the question of what constitutes forgery under Section 2314. In Edge v. United States, 270 F.2d 837 (C.A. 5, 1959), at page 838, it says, "However, where a person not only takes an assumed name but uses that name to designate a fictional person with characteristics, personality, and a semblance of identity, the use of fictitious name as an instrument of fraud in the impersonation of a fictional person is as much a forgery as though the fictional character was real."

■ In the instant case the instrument of fraud was a check payable in the name of a real person and not payable to a fictional person, and whose signature the defendant allegedly forged. Under the reasoning of *Edge*, that also constitutes a forgery under Section 2314, Paragraph 3.

A case very in point to the controversy before us is the case of United States v. DiPietto, 396 F.2d 283 (C.A. 7, 1968). Once again, even though this case is also concerned with American Express Money Orders, the reasoning and language used by the Court of Appeals for the Seventh Circuit, is equally applicable to the securities in the instant case. In the *DiPietto* case, in order that the money orders there involved could be cashed, the amount, name and address of sender, and name of payee would have to be falsely written on the face of the money order and the *payee would have to endorse the back of said money order in order to cash it.* (Emphasis ours).

In the present case the evidence presented at the evidentiary hearing showed that the date and the amount in both numbers and letters have to be written on the face of the check. The payee's name has already been filled in. On the back of the check, and before the payee can cash said check, he has to fill in his endorsement and identification card

number issued to him. In both situations, the payee has to endorse the instrument before it can be cashed. In both cases, the amounts must be filled in on the face of the instruments.

In the *DiPietto* case, defendant raised the defense that such securities were not falsely made, forged, altered or counterfeited securities under Section 2314 and for that purpose he relied on *Streett v. United States,* 331 F.2d 151 (C.A. 8, 1964). In our instant case, the defendant has also raised the defense that the Bankcard checks are not falsely made and forged securities under Section 2314 and has also relied on *Streett,* supra.

The Court, 396 F.2d at page 286, questions the correctness of the *Streett* case and argues that, "In the light of the purpose of the statute, it seems at least a reasonable argument that if the countersignature, which, if genuine, alters the rights evidenced by the security, is a forgery, the check is a forged security for the purpose of 18 U.S.C., Section 2314." In this argument that Court admits the fact that a genuine instrument has been issued and is in existence, and by the forged countersignature of the defendant, the rights evidenced by the security were altered. In the present case, a genuine security had been issued and the alleged actions by the defendant in forging the true payee's name on the endorsement altered the rights evidenced by the Bankcard check to the prejudice of another's rights, and thus made said security a forged security under 18 U.S.C. § 2314. The *DiPietto* case decides that the fraudulent insertions made to the blank money orders constituted forgeries and thereby the Court rejected the *Streett* argument that distinguishes between forged endorsements and forged securities. Petitioner's strong reliance on the *Streett* case and its reasoning fall by the wayside on the strength of the reasoning of the *DiPietto* case. Petitioner also argues and finds support for his position in the case of Prussian v. United States, 282 U.S. 675, 51 S.Ct. 223, 75 L.Ed. 610 (1931). This case is clearly distinguishable from the present case. That case dealt with Title 18, United States Code, Section 471, whereas, the instant case deals with Section 2314, which by its very nature is more encompassing than Section 471. Section 471 deals exclusively with the securities of the United States and Section 2314 deals with all other types of securities. Contrary to the securities covered by Section 2314, the United States' securities of Section 471 when issued are complete in its contents and no spaces are left in blank to be filled in at a later date, as may be the case of securities covered by Section 2314.

The Court, in the *DiPietto* case has followed "the mandate given by the United States Supreme Court in United States v. Sheridan on the broad purposes of the act to assist the states in punishing criminals who utilize the channels of interstate commerce in the furtherance of their crimes."

Wherefore, in view of the foregoing, petitioner's Motion to Dismiss the Indictment for Lack of Jurisdiction and for not Imputing a Crime Against Defendant, must be and is hereby denied.

It is so ordered.